IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DESMOND CONBOY and BRENDAN GILSENAN,<br><br>    Plaintiffs,<br><br>    v.<br><br>CBE Group, Seda Cog, First National Bank s/b/m Metro Bank and U.S. Small Business Administration<br>        Defendant. | CIVIL ACTION NO.: 3:18-CV-00224<br><br>*Civil Action* |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS U.S. SMALL BUSINESS ADMINISTRATION'S, CBE GROUP AND SEDA COG MOTIONS FOR SUMMARY JUDGMENT AND SANCTIONS**

**STATEMENT OF FACTS**

Plaintiffs sold the property, known as 310 North Second Street, Harrisburg PA 18360 by on February 17, 2016. (See Exhibit A – HUD1)[1]. As part of that sale, there were two loans paid off to First National Bank S/B/M Metro Bank, the first mortgage of $432,113.49 and the second mortgage for $45,340.43. Defendant SBA was responsible for backing the second mortgage that was paid off the $45,340.43. Defendant SBA signed off and agreed to permit this sale to take place.  As such, there was an alleged deficiency to the SBA of $276,315.61. This information was, in fact, sent for the first time to Plaintiffs on September 3, 2016, which was 6 months and 18 days after the sale. (See Exhibit B). This was beyond the 6 month cutoff for a deficiency judgment on a mortgage to be pursued. After that time, Defendant SBA transferred the debt

---

[1] All exhibits incorporated by reference from prior pleading and complaint for sake of brevity.

improperly to Defendant CBE Group. As of October 19, 2017, Defendant CBE has not only made many collection attempts in writing, but added on interested and fees so the current debt balance is now allegedly at $374,258.64. (see Exhibit C). At no time was a lawsuit brought or a judgment received during the 6 month period after the sale of the property took place. Defendant CBE has been informed that their collection efforts are not legal, yet they have continued to pursue those efforts despite this knowledge. Further, on or around February 9, 2018, Defendant SBA reported an outstanding balance to the Credit Bureaus for Mr. Conboy. This report stated that the account was allegedly opened on April 15, 2005, the "high balance" was for $594,000, there was a balance of 271,799 and the last time Mr. Conboy allegedly made a payment was October 11, 2017. Further, it had a status of "charged off". This report was done solely to damage Mr. Conboy's credit and in retaliation for the filing of this suit, as there had never been a report previously. There was no reasonable or legal reason for this report, and it was done for completely improper purposes, with the express intent to damage Mr. Conboy, his ability to receive credit and to defame him for anyone else who would potentially attempt to lend him money and see such a derogatory report.

Further, there is no question that Seda Cog had an interest in this matter. (See Exhibit D – modification). Additionally, they were communicating with Plaintiff as late as 2015. Some of the people who communicated with Plaintiff from Seda Cog were X and B. There is no question they still had an interest in this matter and were actively attempting to collect on this debt. As such, they belong as a party to this matter as well.

## LEGAL ARGUMENT

### I. BOTH DEFENDANTS' MOTIONS FAIL TO SHOW THEY ARE ENTITLED TO SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). Furthermore, in deciding the merits of a party's motion for summary judgment, the court's

role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

In this case, summary judgment should be denied because Defendants not only rely on insufficient evidence, but outdated case law, inapplicable arguments and their evidence is so contradictory, that Defendants essentially defeat themselves with their own evidence. To further these proofs though, Defendants now present their own evidence as well, to show substantial material facts now in issue.

As stated in the relatively recent case, *Tepper v Amos*, No. 17-2851 3rd Cir., Aug. 7, 2018, The Court discussed the "default" test and ultimately choose to say that, based on the Supreme court case of *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017), it would no longer apply. Instead, the court chose to follow the plain text of the statute: "an entity whose principal purpose of business is the collection of any debts is a debt collector regardless whether the entity owns the debts it collects. *Id.*

Further, the FDCPA is a "remedial legislation" aimed, as already noted, "to eliminate abusive debt collection practices by debt collectors." *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 174 (3d Cir. 2015) (quoting § 1692(e); *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013)). Importantly, it applies only to "debt collectors," *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000), defined as any person: (1) "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" (the "principal purpose" definition); or (2) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" (the "regularly collects for another," or "regularly collects," definition).1 § 1692a(6). Further, and most importantly, **"The FDCPA is a strict liability statute to the extent**

4

**that it imposes liability without proof of an intentional violation."** *Allen ex. rel, Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011).

As stated previously, the Supreme Court, in *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017), has recently repealed the "default" test. Debtors claimed that Santander Bank, which had purchased their loans already in default and attempted to collect on them, met the second definition of "debt collector," i.e., one who "regularly collects or attempts to collect . . . debts owed or due . . . another." Id. at 1721 (quoting § 1692a(6)). They asserted as well that the Bank met the "principal purpose" definition, but the Court did not review that claim because it was not litigated in the District Court. Id. The Supreme Court began "with a careful examination of the statutory text," in particular the definition's limitation to debts "owed . . . another." Id. It reasoned that "by its plain terms this language seems to focus our attention on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself." Id. This language does not suggest that "whether the owner originated the debt or came by it only through later purchase" determines if it is a debt collector. Id. "All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another.'" Id. Hence the Bank, which collected debts for its own account, did not meet the "regularly collects for another" definition. Id. at 1721–22. The Court also addressed the suggestion that everyone who attempts to collect debt is either a "debt collector" or a "creditor" with respect to a particular debt, but cannot be both. Id. "[S]potting (without granting) th[at] premise," it stated that a company such as the Bank, which collects on debt it purchased for its own account, "would hardly seem to be barred from qualifying as a creditor under the statute's plain terms." Id. But excluded from the definition of "creditor" are those who acquire a debt after

5

default when the debt is assigned or transferred "solely for the purpose of facilitating collection of such debt for another." Id. (quoting § 1692a(4)).

## II. DEFENDANT SBA's MOTION FOR SUMMARY JUDGMENT MUST BE DENIED

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises in part out of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et. seq. and Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681, et seq. *See Alfaro V. Wells Fargo N.A., d/b/a America's Servicing Company*, Civil Action No. 16-7950 (DNJ 2017). While it is accurate that these are not the only claims, they are the Federal claims in this matter and, it is bad faith for Defendant to only remove the action and the turn around and claim the court lacks jurisdiction and also to move for summary judgment on similar grounds. *See Generally Rivas v. Bowling Green Associates, L.P.* No. 13-cv-7812, , at *4-5 (S.D.N.Y. July 24, 2014)). As such, for Defendant to remove to Federal Court, for the sole purpose of attempting dismissal or procuring improper summary judgment, would be tantamount to bad faith. Further, there is no question that this court can hear the related state claims as well based on Supplemental jurisdiction. Supplemental jurisdiction is the authority of United States federal courts to hear additional claims substantially related to the original claim even though the court would lack the subject-matter jurisdiction to hear the additional claims independently. *28 U.S.C. § 1367*. As such, there is no reason to grant summary judgment based on jurisdictional reasons for either party.

As stated by Defendant, it is axiomatic that the United States and its agencies and officers are immune from suit unless they have consented to be sued. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Mitchell*, 445 U.S. 535, 538 (1980). *In re Epps*, 110 B.R. 691 (E.D. Pa. 1990) (sovereign immunity waived under National Housing Act authorizing HUD to "sue and be

sued" in carrying out certain provisions of the Act). Such "sue and be sued" statutes waive sovereign immunity only of particular agencies, not the United States generally. *See Lomas & Nettleton Co. v. Pierce*, 636 F.2d 971, 972-73 (5th Cir. 1981); *Indus. Indem., Inc. v. Landrieu*, 615 F.2d 644, 646 (5th Cir. 1980). If the judgment sought by the plaintiff would "expend itself on the public Treasury," the suit is in reality against the United States regardless of whether the complaint names only Federal agencies or officials. *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (quoting *Land v. Dollar*, 330 U.S. 731, 738 (1947)); *see also FHA V. Burr*, 309 U.S. 242, 250-51 (1940) (garnishment action against Federal agency permitted only to the extent it had funds outside the Treasury); *Presidential Gardens Assocs. v. United States ex rel. Sec'y of HUD*, 175 F.3d 132, 141 (2d Cir. 1999) (waiver of HUD's immunity limited to funds under control of HUD, does not reach general Treasury funds). Finally, in the case of "sue-and-be-sued" agencies, one can argue that, although such governmental units may have independent litigating authority, the Bankruptcy Code, § 106, places limits upon the jurisdiction of the bankruptcy courts over any governmental unit. *Cf. Aetna Cas. & Sur. Co. v. United States*, 655 F.2d 1047 (Ct. Cl. 1981) (although HUD might be suable in other courts upon certain causes of action, Tucker Act places limits upon Court of Claims' jurisdiction over them).

In this case, by transferring the interest in the underlying debt for the sole purpose of attempting to collect on that debt, that was an affirmative action that effectively waived sovereign immunity. Even though it is admitted that the SBA transferred the debt, they were still responsible for the apparent "deficiency" and the initiation of the transfer. As such, even the SBA was not the primary party to begin the debt collection process, it was still their actions that permitted it to proceed. As such, they can be sued for their actions that left to the collection

action, even if they were not directly the party doing so. Specifically, the SBA **can** be held accountable for their actions under the FCRA.

In *Kent v. TransUnion*, plaintiff Rowdy Kent sued multiple consumer reporting agencies and the United States Defense Finance and Accounting Services for alleged violations of the Fair Credit Reporting Act. See Kent v. Trans Union, LLC, docket number 16-322 (2017) DFAS moved to dismiss Kent's claims, arguing that it possesses sovereign immunity from claims under the FCRA. On August 25, 2017 the District Court for the Northern District of Texas rejected DFAS's contention, finding that Congress had waived sovereign immunity for claims under the FCRA. As such, because the actions taken by the SBA led to damage to Plaintiff Conboy's credit, that is enough to keep them in the case for the FCRA violation and related stated claims as well as not granting summary judgment.

Further, there is a relevant exception to the sovereign immunity waiver. If the plaintiff seeks less than $10,000 in damages, the federal district courts have concurrent jurisdiction with the United States Court of Federal Claims based on 28 U.S.C. § 1346, also known as the "Little Tucker Act". The current version gives concurrent jurisdiction to the Court of Federal Claims and the District Courts "for the recovery of … any sum alleged to have been excessive or in any manner wrongfully collected … and for claims below $10,000" See 28 U.S.C. § 1346(a)(2). For this case, Plaintiffs are willing to limit their claim against the SBA to below $10,000.00 for the damage they caused through the transfer they effectuated as well as the damage to credit, particularly if the SBA agrees to repair said damage. As such, even if the FDCPA cannot be brought against Defendant SBA, it can still proceed against the other Defendants and as such, summary judgment should be granted to the claim fully. As such, the SBA essentially admitted and agreed that the other claims, as long as they are each limited to $10,000.00 can proceed. The

only other "argument" is a failure to exhaust "administrative remedies" but in none of the pleadings is it stated what remedies should have been pursued before filing this suit. As such, this argument should be considered a red herring at most, and can be denied.

### III. DEFENDANT SED COGA AND CBE GROUP'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED

Seda Cog and CBE Group rely primarily on the assertion they "transferred their rights away" in 2006. This simply is not accurate, as a modification was signed with them in 2013 (see Exhibit D) and they were contacting Plaintiff as late as 2015. As such, their implicit statute of limitations argument against the claims against them must be denied.

Several of the above arguments can be applied to Seda Cog as well and are incorporated by reference. As in the *Alfaro* case, the Plaintiffs are "*not inviting the district court to review and reject any state judgment under this cause of action." Alfaro V. Wells Fargo N.A., d/b/a America's Servicing Company*, Civil Action No. 16-7950 (DNJ 2017). The reason for this is because the actionable offenses that the statute would have applied occurred, as Defendants admitted well within the two years statute. The actions that occurred by Defendant previously clearly show the scheme at issue here. Even though they try to claim they had no interest since 2006, that is simply not accurate. As such, they must remain as Defendants in this action for all of the damages caused to Plaintiffs,

As to the breach of contract, unjust enrichment and the other state claims, the statute that applies is the a four year statute, rather than a two year statue, as per either 42 Pa. Consol. Stat. § 5525(7), (8); 42 Pa. Consol. Stat. § 5529 for written contracts or 42 Pa. Consol. Stat. § 5525(3) for oral contracts. These relate to the modification that was offered and which payments were made on it.

Additionally, there should be no question that Defendant Seda Cog can be considered a Debt Collector. Defendant squarely falls into the definition of a "debt collector" because they certainly qualify as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6). Further, a party is also a "debt collector" if the obligation is already in default when it is assigned. Evankavitch v. Green Tree Servicing, LLC, 793 F.3d 355, 358, fn. 2 (3d Cir. 2015). In this case, by either standard, Defendant would be considered a debt collector, as through their actions there is now an attempt to collect the underlying debt in question. Finally whether or not a party was a "debt collector" is a material fact for a fact finder to decide. A mere allegation a part was not is insufficient and since Defendants attached no actual evidence to this matter, the argument should be deemed moot.

## IV. **THE MOTIONS FOR SANCTIONS SHOULD BE DENIED**

Defendants' motions utterly lacks merit and was filed for an improper purpose, and its denial should be compounded by a corresponding levy of sanctions and costs against Defendants. Defendants have used both the threat and the filing of the motion, not as a means to filter a frivolous claim but as a bullying tactic intended to intimidate Plaintiffs into withdrawing legitimate claims This misuse of Rule 11 is in and of itself sanctionable. Indeed, the Advisory Committee notes point out that Rule 11 should not be used "to emphasize the merits of a party's position, to exact an unjust settlement, [or] to intimidate an adversary into withdrawing contentions that are fairly debatable." *See Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co. of Florida*, 827 F.2d 1454, 1458 (11th Cir. 1987) (affirming the denial

of sanctions where the issues were fairly debatable and not easily resolved, and there was no clear binding precedent).

The standard under Rule 11 is "stringent" because sanctions "1) are in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes, 2) tend to spawn satellite litigation counter-productive to efficient disposition of cases, and 3) increase tensions among the litigating bar and between [the] bench and [the] bar." *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988). While the focus of Rule 11 is on whether a claim is wholly without merit, and is not dictated by whether resources will be expended in deciding the motion, Rule 11 motions should conserve rather than misuse judicial resources. *See Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 99 (3d Cir. 1988) ("Rather than misusing scarce resources, [the] timely filing and disposition of Rule 11 motions should conserve judicial energies.").

Defendants' motions fail not only for its lack of merit, but it also violates the ethical underpinnings of Rule 11. Rule 11 imposes a duty on the party seeking sanctions to be circumspect in pursuing such a drastic remedy and to not to use the device for an improper purpose lest it may discourage expansion of the law through creative legal theories. *See Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277, 297 (3d Cir. 2010) (Rule 11 "should not be applied to adventuresome, though responsible, lawyering which advocates creative legal theories.")(citations omitted). Sanctions are a drastic remedy reserved for only the most extraordinary circumstances. *See, Park v. Seoul Broad. Sys. Co*., 2008 U.S. Dist. LEXIS 17277, at *1 (S.D.N.Y. Mar. 6, 2008). Whether a claim can survive on the merits is wholly distinct from whether that claim is frivolous. *See Abdelhamid v. Altria Group, Inc*., 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007)("'When divining the point at which an argument turns from merely

losing to losing and sanctionable' courts must 'resolve all doubts in favor of the signer of the pleading.'")

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Defendants' motions in full.

    /s/ Joshua Thomas, Esq.
Joshua Thomas, Esq.
*Attorneys for Plaintiffs*

Dated: September 30, 2019