## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DESMOND CONBOY, et al.** | : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:18-224** |
| **v.** | : | **(JUDGE MANNION)** |
| **U.S. SMALL BUSINESS ADMINISTRATION, et al.** | : | |
| | : | |
| **Defendants** | : | |
| | : | |

## MEMORANDUM

Presently before the court are the following five motions: (1) a motion for summary judgment filed by defendant Seda Cog, (Doc. 47); (2) a motion for summary judgment filed by defendant CBE Group ("CBE"), (Doc. 40); (3) a motion for sanctions pursuant to Rule 37 filed by CBE, (Doc. 43); (4) a motion for sanctions pursuant to Rule 11 filed by CBE, (Doc. 45); and (5) a motion for summary judgment filed by defendant U.S. Small Business Administration ("SBA"), (Doc. 39).[1] For the reasons set forth below, the court

---

[1] This action was originally also brought against First National Bank s/b/m Metro Bank ("FNB") and the U.S. Department of the Treasury ("Treasury"). (Doc. 1-2). On May 5, 2018, the plaintiffs filed an amended complaint, (Doc. 9), which dropped the Treasury as a defendant. Additionally, pursuant to a stipulation by the parties, (Doc. 27), the court dismissed FNB from the case with prejudice by order dated May 15, 2018, (Doc. 28).

will **GRANT** the motions for summary judgment and **DENY** the motions for sanctions.

## I.    BACKGROUND[2]

The plaintiffs Desmond Conboy and Brendan Gilsenan, (collectively, "Plaintiffs"), brought the present action against the defendants on December 4, 2017, in the Court of Common Pleas for Monroe County. (Doc. 1-2). On February 6, 2018, SBA removed the action to this court. (Doc. 1). CBE filed an answer to the complaint. (Doc. 2).

On March 5, 2018, Plaintiffs filed an amended complaint. (Doc. 9). In Count I, Plaintiffs allege that all defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq.* In Count II, Plaintiffs allege that all defendants violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-1 *et seq.* In Count III, Plaintiffs allege a breach of contract claim against all defendants for breaching the contractual terms of the "trial modification" by engaging in

---

[2] These facts are derived from the defendants' statements of fact, which, as discussed in further detail below, are deemed to be admitted by Plaintiffs under Local Rule 56.1 due to their failure to contest them. The court only includes facts material to the issues in the case, and it does not include legal conclusions.

deceptive and fraudulent practices. In Count IV, Plaintiffs bring an unjust enrichment claim against CBE and SBA, alleging they improperly added $79,893.70 in fees for collection purposes. In Count V, Plaintiffs allege that SBA violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq.*, by reporting false and derogatory information to credit reporting agencies. In Count VI, Plaintiffs bring a defamation claim against SBA for publishing false statements to credit reporting agencies.

Plaintiffs' claims stem from a debt they incurred for a piece of real property that they purchased to open a restaurant, Ceoltas's Irish Pub, at 310 North Second Street, Harrisburg, Pennsylvania ("the Property"). SBA guaranteed a 504 small business loan, pursuant to SBA's 504 loan program, in the amount of $594,000 to fund the purchase and renovation of the Property. Plaintiffs executed a note,[3] mortgage lien, and an unconditional personal guarantee. The unconditional personal guarantee indicated that Plaintiffs "unconditionally guarantee[d] payment to Lender of all amounts owing under the Note," that the guarantee would "remain[] in effect until the Note [was] paid in full," and that their "liability [would] continue even if SBA

---

[3] Plaintiff Conboy signed the note as president of Congil, Inc. d/b/a Ceoltas's Irish Pub and Plaintiff Gilsenan signed the note as President of 310 North Second Street, Inc. (Doc. 50-1, at 21).

pa[id] Lender." (Doc. 50-1, at 36, 38). The unconditional personal guarantee also indicated that the note and guarantee would be construed and enforced under federal law and stated that Plaintiffs "may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law." (Doc. 50-1, at 37).

In 2015, Plaintiffs defaulted on their loan and, on February 17, 2016, they sold the Property in a voluntary sale. SBA executed a release of mortgage in order to permit the sale to proceed, which stated "IT [WA]S NOT intended hereby to release, discharge or cancel the indebtedness or obligation which said Mortgage secures." (Doc. 50-1, at 51) (emphasis omitted). By letter dated October 16, 2015, Plaintiffs requested that they be "released from any further guarantee and obligation concerning the SEDA-COG loan and to the [SBA]." (Doc. 50-1, at 55). Defendants declined to do so.

On March 23, 2016, SBA issued demand notices to Plaintiffs regarding their outstanding debt of $272,208.80, plus $22.32 per day in interest until paid. The notices warned Plaintiffs that if payment in full or an offer in compromise was not received, legal action and/or referral to the Treasury for collection would be pursued, which had the potential to include garnishment

of wages, income offsets, liens, referral of the debt to a private collection agency, or reporting the delinquent debt to credit bureaus. (Doc. 50-1, at 59-60).

On June 27, 2016, SBA issued a second set of notices, which stated that SBA intended to refer Plaintiffs to the Treasury as delinquent borrowers. The notices informed Plaintiffs of the opportunity to dispute the debt administratively and again warned them of possible collection actions. (Doc. 50-1, at 70-71).

On July 18, 2016, Plaintiffs, through counsel, wrote SBA at the address provided in the second notice stating,

> We have repeatedly stated to your intermediary, SEDA-COG, that there is very little ability for the [Plaintiffs] to make payment. . . . We have offered a payment proposal with no response other than that the SBA declines to do such. We would like to understand the reasons for the denial and as to whether there is any possibility of a payment arrangement.

(Doc. 50-1, at 68).

On August 30, 2016, and September 3, 2016, the Treasury issued notices to Plaintiffs indicating that SBA referred their unpaid debts to the Treasury. (Doc. 50-1, at 73-78). On October 12, 2016, the Treasury issued

Plaintiff Gilsenan a notice of intent to initiate administrative wage garnishment proceedings. (Doc. 50-1, at 77).

On December 4, 2017, Plaintiffs initiated this action. In their present amended complaint, they allege that they were first notified of the alleged $276,315.61 debt on September 3, 2016, which was six months and eighteen days after the sale of the Property and, therefore, beyond the six-month-cutoff for a deficiency judgment on a mortgage to be pursued. Plaintiffs contend that SBA then improperly transferred the debt to CBE, which has made "many" collection attempts, as well as added interest and fees, despite being informed of the illegality of its attempts. Plaintiffs allege that SBA reported to the credit bureaus that Plaintiff Conboy had outstanding balance of $594,000, with a status of "charged off," which was done to damage Plaintiff Conboy's credit and in retaliation for the filing of this suit. (Doc. 9, at 4).

On March 19, 2018, and April 5, 2018, SBA and Seda Cog, respectively, filed motions to dismiss. (Doc. 12; Doc. 16). On May 7, 2018, Plaintiffs filed a brief in opposition to both motions. (Doc. 24).

After fact discovery concluded, on July 10, 2019, SBA, CBE, and Seda Cog filed motions for summary judgment. (Doc. 39; Doc. 40; Doc. 47). In

addition to its motion for summary judgment, CBE also filed two motions for sanctions under Federal Rules of Civil Procedure 11 and 37. (Doc. 43; Doc. 45).

CBE filed briefs in support of all three motions, as well as a statement of material facts, on July 10, 2019. (Doc. 41; Doc. 42; Doc. 44; Doc. 46). Seda Cog filed its brief in support on July 11, 2019, and its statement of material facts on July 12, 2019. (Doc. 48; Doc. 49). SBA filed its brief in support and statement of material facts on July 24, 2019.[4] (Doc. 50; Doc 51).

Pursuant to Local Rule 7.6, briefs opposing motions must be filed within fourteen days of the movant's brief; however, "[a] brief in opposition to a motion for summary judgment and [Local Rule] 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief." M.D.Pa. Local Rule 7.6. Accordingly, Plaintiffs' briefs in opposition to the motions for summary judgment were due July 31, 2019, August 1, 2019, and August 14, 2019, and their briefs in opposition to the motions for sanctions

---

[4] Because SBA's and CBE's motions for summary judgment reasserted the arguments in their motions to dismiss, the court dismissed their motions for dismissal, (Doc. 12; Doc 16), as moot on August 14, 2019. (Doc. 52).

were due by July 24, 2019. Plaintiffs failed to file any timely brief in opposition.

Instead, without seeking concurrence of the other parties as is required under Local Rule 7.1, Plaintiffs filed a motion for an extension of time requesting the court set a "universal response date" of September 30, 2019. The motion acknowledged that their briefs in opposition had various due dates but stated that "it seem[ed] likely, after a full review that they c[ould] all be handled in one complete opposition pleading." (Doc. 53). The court granted the motion. (Doc. 54).

Plaintiffs nevertheless did not file a brief in opposition by September 30, 2019. Instead, Plaintiffs filed their solitary brief in opposition to all five motions on November 10, 2019.[5] (Doc. 55). Crucially, here, Plaintiffs failed to file responsive statements as required by Local Rule 56.1, which states,

> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.

---

[5] Notably, as SBA points out, despite this additional time, Plaintiffs' brief appears to be in large part a word-for-word regurgitation of their brief in opposition to the motions to dismiss. *Compare* Doc. 24, *with* Doc. 55.

Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.

*All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party*.

M.D.Pa. Local Rule 56.1 (emphasis added).

Defendants each filed reply briefs observing that Plaintiffs' failure to dispute their statements of material fact rendered them admitted. (Doc. 56; Doc. 57; Doc. 58; Doc. 59; Doc. 60). Accordingly, the court will treat the facts set forth in each of the defendant's statements of material fact as admitted and will review the motions to dismiss in light of those admissions.

## II. DISCUSSION[6]

### a. Seda Cog's Motion for Summary Judgment

In Seda motion for summary judgment, it seeks dismissal of all claims against it due to Plaintiffs' failure to make any allegations against it in the

---

[6] Since all parties state the correct standard of review applicable to a summary judgment motion, the court will not repeat it herein. Suffice to say that to prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact and that the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *See Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

amended complaint and because, substantively, Plaintiffs cannot succeed on any of their claims against Seda Cog.

Seda Cog argues that Plaintiffs have failed to establish a cause of action against it under the FDCPA, since the FDCPA applies only to debts arising "primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment," and the debt at issue here arose from a business loan. 15 U.S.C. §1692a(5). Moreover, Seda Cog argues that it is not a debt collector for purposes of the FDCPA, since its "principal purpose" is not the "collection of any debts." 15 U.S.C. §1692a(6).

Seda Cog indicates that it is a regional, multi-county development agency which acted as a facilitator between SBA and Plaintiffs at the time of the original loan transaction. However, in 2006, Seda Cog states that it assigned all rights it had in the loan to SBA. Seda Cog attached a copy of a document titled, "Assignment and Reassignment," which reflects this assignment on October 4, 2006. (Doc. 18-1). Accordingly, Seda Cog argues that the FDCPA claim fails because it did not have standing to collect on the loan obligation, nor did it make any collection attempts against Plaintiffs on the loan.

Seda Cog argues that Plaintiffs' claims against it under the UTPCPL similarly fail, since the UTPCPL applies to "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal," and as previously noted, this action arose out of a business loan. 73 P.S. §201-9.2.

Finally, as to the Count III breach of contract claim, Seda Cog argues that summary judgment is appropriate since Plaintiffs have failed to reference, cite, or present any evidence of a contract between themselves and Seda Cog.

Here, in light of Plaintiffs' admissions that they have "failed to present any facts and/or evidence to support a claim under the [FDCPA] as to Seda Cog," "failed to present any facts and/or evidence of any role or wrongdoing as to . . . Seda Cog or that they in any way violated the Pennsylvania [UTPCPL]," and that they "failed to present any facts and/or evidence as to a breach of contract case," the entry of summary judgment in favor of Seda Cog is appropriate on all Counts. (Doc. 49, at 4). Sega Cog correctly observes that, other than identifying it as a defendant, Plaintiffs have set forth no allegations whatsoever against Seda Cog. Indeed, other than identifying

Seda Cog as a corporation and listing its principal place of business, Plaintiffs fail to mention Seda Cog in any other part of the amended complaint. (Doc. 9, at 2).

Although Plaintiffs argue that "there is no question that Seda Cog had an interest in this matter," and that it was "communicating with Plaintiff[s] as late at 2015," they have not identified anything in the record to substantiate these arguments. Plaintiffs cite to an "Exhibit D – modification"; however, there is no Exhibit D attached to either the original complaint, (Doc. 1-1), or the amended complaint, (Doc. 9), nor have Plaintiffs attached any exhibits to their brief in opposition. Further, none of the exhibits that Plaintiffs have attached to the original complaint mention Seda Cog or otherwise lend factual support for their assertions. In fact, the only evidence in the record regarding Seda Cog is the document titled, "Assignment and Reassignment," which reflects that Seda Cog assigned its interest in the loan to SBA on October 4, 2006. (Doc. 18-1) Accordingly, because Plaintiffs have failed to identify any factual support for their arguments that would enable them to survive the present motion for summary judgment, Seda Cog's motion, (Doc 47), is **GRANTED**.

### b. CBE's Motion for Summary Judgment

Similar to Seda Cog, CBE argues that summary judgment should be granted on the FDCPA claims because the FDCPA does not apply to commercial debts and it is undisputed that the debt at issue here arose out of a business loan for the purpose commercial property.

CBE is correct. The FDCPA does not apply to commercial debts. *See Staub v. Harris*, 626 F.2d 275, 278 (3d Cir. 1980) (observing that the FDCPA "was intended to apply only to debts contracted by consumers for personal, family or household purposes," and that "even the collection of commercial accounts is beyond its coverage" (internal quotation marks omitted)); *see also Cronin v. Oakes*, No. 14-2414, 2014 WL 7398949, at *2 (E.D.Pa. Dec. 30, 2014) (collecting cases). In determining whether a debt is a consumer debt or a commercial or business debt, courts look at the nature of the transaction from which the debt arose. *Id.* at *3.

From the undisputed evidence of record, it is plain that the debt at issue is a commercial one, having arisen from Plaintiffs' default on an SBA-guaranteed loan, which they incurred in order to purchase and renovate a commercial business, Ceoltas's Irish Pub. (Doc. 50, at 2; Doc. 50-1, at 4). Moreover, given their deemed admissions, Plaintiffs have admitted that "[t]he debt at issue is a commercial debt," which was "not incurred primarily for

personal, family, or household purposes." (Doc. 42, at 2). Accordingly, the FDCPA is inapplicable here and the court will enter summary judgment in favor of CBE on Count I.

In a similar fashion, CBE argues that Plaintiffs' UTPCPL claim fails because the UTPCPL, like the FDCPA, does not apply to commercial or business debts. The court agrees. By its own terms, the UTPCPL does not apply to commercial debts like the one at issue here. Section 9.2(a) of the UTPCPL states,

> Any person who purchases or leases goods or services *primarily for personal, family or household purposes* and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 31 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater.

73 P.S. §201-9.2(a) (emphasis added); *see also In re Smith*, 866 F.2d 576, 583 (3d Cir. 1989) ("[T]he class of litigant [under the UTPCPL] includes only those persons who purchase or lease goods or services *primarily for consumer use rather than for commercial use.*" (emphasis added)); *Sheehan v. Mellon Bank*, No. 95-2969, 1995 WL 549018, at *2 (E.D.Pa. Sept. 13, 1995) ("[T]he []UTPCPL does not create a cause of action for commercial

- 14 -

debtors. In parallel with the FDCPA, the []UTPCPL provides for a private cause of action by a debtor only where the debt arose from a transaction in which the debtor acquired 'goods or services principally for personal, family or household purposes.'"). Therefore, because the debt at issue here is indisputably commercial, the UTPCPL is inapplicable and the court will enter summary judgment in favor of CBE on Count II.

With regard to the Count III breach of contract claim, by virtue of their admissions to CBE's statement of material facts, Plaintiffs have admitted that "CBE did not enter into any contract with Plaintiffs." (Doc. 42, at 2). Accordingly, Plaintiffs' breach of contract claim fails, and the court will enter summary judgment in favor of CBE on Count III.

Finally, as to the Count IV unjust enrichment claim, CBE argues that summary judgment is appropriate because Plaintiffs never made any payments to CBE and, therefore, there was no enrichment, let alone unjust enrichment.

An action based on unjust enrichment is an equitable action which sounds in quasi-contract, a contract implied in law. *Sevast v. Kakouras*, 915 A.2d 1147, 1153 n.7 (2007). Where a plaintiff claims unjust enrichment, he is required to "show that the party against whom recovery is sought either

wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider." *Bair v. Purcell*, 500 F.Supp.2d 468, 499 (M.D.Pa. 2007) (quoting *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987)). Under Pennsylvania law, the elements of a claim for unjust enrichment are (1) the plaintiff conferred a benefit upon the defendant; (2) an appreciation of such benefits by the defendant; and (3) the defendant accepted and retained such benefit under circumstances where it would be inequitable for the defendant to retain the benefit without payment of value. *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000); *Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, 832 A.2d 501, 507 (Pa.Super.Ct. 2003).

Here, once again, in light of Plaintiffs' admissions, the entry of summary judgment in favor of CBE is appropriate. As CBE notes, a claim for unjust enrichment requires that a plaintiff show the defendant has wrongfully secured some benefit and, here, Plaintiffs have admitted that they "never made any payments to CBE." (Doc. 42, at 2). Moreover, Plaintiffs have not alleged, nor cited to any evidence of record, which shows that CBE wrongfully secured any benefit from Plaintiffs. To the contrary, the only evidence of record, which was submitted by CBE, indicates that "CBE has

not received any payments in regards to [Plaintiffs'] debt." (Doc. 41-1 at 2). Therefore, Plaintiffs' unjust enrichment claim against CBE fails and the court will enter summary judgement in favor of CBE on Count IV. Accordingly, in light of the above, CBE's motion for summary judgment, (Doc. 40), is **GRANTED**.

### c. CBE's Motions for Sanctions

CBE filed two motions for sanctions pursuant to Federal Rules of Civil Procedure 11 and 37. As to its Rule 11 motion, CBE argues that counsel for Plaintiffs should be sanctioned for bringing meritless claims against CBE. CBE indicates that, both prior to and after Plaintiffs filed suit, CBE's counsel informed Plaintiffs' counsel that the FDCPA and UTPCPL were inapplicable since Plaintiffs' debt was a commercial one; however, CBE argues that Plaintiffs' counsel never addressed CBE's concerns and was "generally unresponsive." (Doc. 46, at 5). CBE additionally argues that, because no contract exists between Plaintiffs and CBE, and because Plaintiffs never made any payments to CBE, their breach of contract and unjust enrichment claims are baseless, and yet Plaintiffs persisted in their allegations. CBE contends that the imposition of sanctions under Rule 11 is appropriate because it would deter similar future conduct.

In its Rule 37 motion, CBE asks the court to compel Plaintiffs to provide proper discovery responses and to enter sanctions against Plaintiffs and Plaintiffs' counsel for failing to adhere to the court's orders given during an April 8, 2019 discovery dispute conference. Specifically, CBE argues that, during the conference, the court determined that Plaintiffs' interrogatory responses were deficient because they were not verified and referred back to the complaint, and ordered Plaintiffs to provide supplemental discovery responses by April 26, 2019. CBE asserts that Plaintiffs have yet to do so and requests that the court compel CBE to provide supplemental interrogatory responses and enter monetary sanctions to reimburse CBE for time it spent "attempting to prod Plaintiffs to provide discovery responses that meet the bare minimum of what is required of any party in a lawsuit." (Doc. 44, at 6).

Rule 11 reads, in pertinent part:

> [A]n attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . it is not being presented for any improper purpose . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary

> support after a reasonable opportunity for further
> investigation or discovery . . . .

Fed.R.Civ.P. 11(b). The Third Circuit has noted that "[f]ormulating a rule broad enough to curb abusive litigation tactics and misuse of the court's process but yet not so sweeping as to hinder zealous advocacy was obviously a formidable task." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir.1987). However, the Third Circuit has held that Rule 11 imposes an obligation on attorneys to "Stop, Think, Investigate and Research" before filing litigation documents. *Id.* The court cautioned, though, that "Rule 11 is not to be used routinely when the parties disagree about the correct resolution of a matter in litigation. Rule 11 is intended for only exceptional circumstances." *Id.* at 483 (internal quotation marks omitted).

Rule 37(a)(3) permits a party seeking a discovery response to move for an order compelling an answer where the opposing party fails to answer an interrogatory. Fed.R.Civ.P. 37(a)(3)((B)(iii). Additionally, if the motion is granted, Rule 37 indicates that, under certain circumstances, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed.R.Civ.P. 37(a)(5)(A).

Here, the court finds no extraordinary circumstances warranting the imposition of sanctions under Rule 11. Although Plaintiffs' have been lax in their adherence to the Federal and Local Rules, their conduct has not risen to a level such that the court deems sanctions appropriate. *See Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir. 1987) (holding that Rule 11 "should not be invoked against an attorney who fails to dismiss a case" even after an opposing attorney, for example, submits evidence that the suit is barred by a statute of limitations or *res judicata*).

The court will also deny the motion for sanctions under Rule 37. The motion is moot to the extent that it seeks to compel interrogatory responses given that the court has granted CBE's motion for summary judgment in full. Further, the record does not indicate that Plaintiffs have repeatedly abused the discovery process in a manner that significantly prejudiced CBE or caused it to expend significant attorneys' fees such that monetary sanctions are warranted. *See* Fed.R.Civ.P. 37(c)(1) (Rule 37 does not require sanctions if a failure to disclose was "substantially . . . harmless.").

Therefore, finding no grounds for sanctions based upon the current record, the court will **DENY** CBE's motion for sanctions under Rule 11, (Doc. 45), and the motion for sanctions under Rule 37, (Doc. 43).

### d. SBA's Motion for Summary Judgment

Initially, for the reasons set forth in the court's analysis of CBE's motion for summary judgment, Plaintiffs' claims under the FDCPA and UTPCPL fail as a matter of law and, therefore, the court will enter summary judgment in SBA's favor on Count I and Count II.

As to the other Counts, SBA argues that the allegations in the amended complaint against it are meritless because they are based upon a faulty premise—that is, that SBA's collections efforts are improper because the debt is time-barred and uncollectable under Pennsylvania law, 42 Pa.C.S. §§5522(b)(2),[7] and 8103.[8] Observing that the loan documents themselves

_____

[7] In pertinent part, this statute reads,

> The following actions and proceedings must be commenced within six months: . . . A petition for the establishment of a deficiency judgment following execution and delivery of the sheriff's deed for the property sold in connection with the execution proceedings referenced in the provisions of section 8103(a) (relating to deficiency judgments).

42 Pa.C.S. §5522(b)(2).

[8] In pertinent part, this section reads,

> Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount

- 21 -

provide that they will be construed and enforced under federal and not state law, and that Plaintiffs "may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law," SBA argues that summary judgment on all remaining Counts is appropriate. (Doc. 50-1, at 37). SBA notes that Plaintiffs have admitted this fact, (Doc. 50, at 3), and as such, it argues that the state statutes on which Plaintiffs rely are inapplicable. Moreover, SBA observes that, even if federal law were not controlling, those statutes, which impose a six-month period to establish a deficiency judgment after a property is sold to a judgment creditor in an execution proceeding, would nonetheless be inapplicable to the present action because, in this case, the Property was sold through a voluntary sale, not through an execution proceeding or sheriff's sale, and it was sold to a third-party, not to a judgment creditor.[9]

---

of the judgment, interest and costs and the judgment creditor seeks to collect the balance due on said judgment, interest and costs, the judgment creditor shall petition the court to fix the fair market value of the real property sold. The petition shall be filed as a supplementary proceeding in the matter in which the judgment was entered. . . .

42 Pa.C.S. §8103(a).

[9] Furthermore, SBA notes that the applicable statute of limitations for money damages on a defaulted loan guarantee, pursuant to 28 U.S.C.

- 22 -

SBA also reiterates argument from its motion to dismiss, asserting that the doctrine of sovereign immunity bars this suit. With regard to Count III, SBA argues that this court lacks jurisdiction over the breach of contract claim pursuant to the Tucker Act, 28 U.S.C. §1491(a)(1), since Plaintiffs plead damages in excess of $10,000 and such claims may only be brought in the United States Court of Federal Claims. Plaintiffs argue this court also lacks jurisdiction over Counts IV and V because the federal government has not waived sovereign immunity for unjust enrichment claims, and because Plaintiffs have not alleged any facts to indicate that any of the limited waivers of sovereign immunity with respect to the FCRA are applicable here. Even if they had, SBA argues that Plaintiffs' Count V FCRA claim is barred because they failed to first exhaust their administrative remedies, as is required under Federal Tort Claims Act, ("FTCA"), 28 U.S.C. §2675(a). Lastly, SBA argues that Count VI is barred since the FTCA bars defamation claims against the federal government. *See* 28 U.S.C. §§1346(b), 2680(h).

---

§2415(a), is six years, not six months. SBA argues that it is entitled to summary judgment since it still has several years to bring an action to enforce the terms of its 504 loan and, therefore, contrary to their claims, Plaintiffs' debt remains valid and collectable pursuant to the express language of the loan documents and federal law.

In response, Plaintiffs argue that SBA is relying on insufficient evidence and outdated case law in support of its motion. Plaintiffs, however, appear to address only one of SBA's arguments—that of the doctrine of sovereign immunity's application to their breach of contract claim. Plaintiffs generally argue that SBA, as a "sue and be sued" agency, waived sovereign immunity through the "affirmative action" of "transferring the interest in the underlying debt for the sole purpose of attempting to collect on that debt." (Doc. 55, at 7). With regard to the Tucker Act, Plaintiffs contend that, because they are willing to limit their claims against SBA to $10,000, this court has concurrent jurisdiction with the Court of Federal Claims. Finally, as to their failure to exhaust administrative remedies, Plaintiffs' response is that "in none of the pleadings is it stated what remedies should have been pursued before filing this suit," and that, "[a]s such, th[a]t argument should be considered a red herring at most, and can be denied." (Doc. 55, at 9).

Initially, the court agrees with SBA that it lacks jurisdiction over Counts IV and VI. With resect to the Count IV unjust enrichment claim, the United States has not waived sovereign immunity for unjust enrichment claims. *See United States v. Craig*, 694 F.3d 509, 513 (3d Cir. 2012) ("[W]e [are not] aware of any general waiver of sovereign immunity for unjust enrichment

- 24 -

claims. Moreover, fairness or policy reasons cannot by themselves waive sovereign immunity." (internal quotation marks omitted)); *see also Westbay Steel, Inc. v. United States*, 970 F.2d 648 (9th Cir. 1992) (observing the FTCA does not contain a waiver of sovereign immunity for equitable claims); *Sumwalt v. U.S. Department of Veterans Affairs*, No. 3:13-cv-00367, 2013 WL 6056602, at *4 (W.D.N.C. Nov. 15, 2013) (observing that those courts that have addressed the issue have held that unjust enrichment is not a tort claim, but a claim made in furtherance of establishing the existence of an implied contract, which is barred by the FTCA).

Similarly, as to the Count VI defamation claim, this court lacks jurisdiction as defamation is not included in the list of actions for which the United States has waived sovereign immunity under the FTCA and, accordingly, summary judgment is appropriate. *See* 28 U.S.C. §§1346(b), 2680(h); *see also Izzo v. United States* Government, 138 Fed.App'x 387, 389 (3d Cir. 2005) (holding a defamation claim against the United States was properly dismissed under the FTCA).

As to the Count V FCRA claim, even if Plaintiffs had established authority for the dubious proposition that the United States is a "person" for purposes of the FCRA and therefore can be subject to the FCRA's criminal

penalties, *see Daniel v. National Park Service*, 891 F.3d 762, 770 (9th Cir. 2018), summary judgment is nonetheless appropriate on this claim since Plaintiffs have failed to "come forward with specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). Plaintiffs have not addressed SBA's arguments on Count V in any substantive way, nor have they cited to any fact of record whatsoever, let alone noted where a genuine issue of fact exists. Because Plaintiffs may not oppose a motion for summary judgment by relying merely on the pleadings, as they have done here,[10] the entry of summary judgment is appropriate on this Count. *See Celotex Corp.*, 477 U.S. at 324 (holding that "56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except the mere pleadings themselves*." (emphasis added)).

---

[10] With regard to this Count, Plaintiffs merely state that "because the actions taken by the SBA led to damage to Plaintiff Conboy's credit, that is enough to keep them in the case for the FCRA violation and related stated claims as well as not granting summary judgment." (Doc. 55, at 8).

Finally, as to Count III, Plaintiffs are correct that their choice to waive damages over $10,000 would allow this court jurisdiction over their breach of contract claim. As the Third Circuit explained,

> Jurisdiction over non-tort monetary claims against the United States is exclusively defined by the Tucker Act, as codified at 28 U.S.C. §§1346, 1491, because it is only under the terms of the Tucker Act that the United States waives its sovereign immunity to non-tort claims seeking monetary relief. *See Hahn v. United States*, 757 F.2d 581, 585–86 (3d Cir.1985). Under the Tucker Act, the United States Court of Claims and district courts share original jurisdiction over non-tort monetary claims against the United States not exceeding $10,000. 28 U.S.C. §1346(a)(2) (sometimes referred to as the "Little Tucker Act"). Original jurisdiction over such claims seeking more than $10,000 vests exclusively in the Claims Court. 28 U.S.C. §1491 (the so-called "Big Tucker Act").[] *In order to permit plaintiffs to exercise a choice as to whether to proceed in the district court or in the Court of Claims, we have permitted plaintiffs to waive damages in excess of $10,000,* a practice also followed by other circuits.

*Chabal v. Reagan*, 822 F.2d 349, 353 (3d Cir. 1987) (emphasis added) (some internal citations omitted).

Accordingly, due to Plaintiffs' waiver of damages in excess of $10,000, the court would possess jurisdiction over this claim. However, Plaintiffs' breach of contract claim nonetheless fails in light of their admissions. Plaintiffs have specifically admitted that "[t]he loan documents all provide

they shall be construed and enforced under federal law, and the Plaintiffs 'may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law,'" and that "Plaintiffs continue to owe SBA the balance of their debt, notwithstanding the voluntary sale of the business [P]roperty." (Doc. 50, at 3-4). By virtue of these admissions, Plaintiffs have conceded that they may not bring the instant claims against SBA and, as a result, SBA is entitled to the entry of summary judgment on Count III, as well as Plaintiffs' other claims.

### III. CONCLUSION

In conclusion, for the reasons set forth above, the court will **GRANT** the motions for summary judgment filed by Seda Cog, CBE, and SBA, (Doc. 47; Doc. 40; Doc. 39), and will **DENY** the motions for sanctions filed by CBE, (Doc. 43; Doc. 45).


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 16, 2020**
18-224-01